24 28 87 Regalio Knights versus City University of New York. We're going to start with Attorney Racinus. Is that right? Yes, Mr. Racinus, your honor. Racinus, I'm sorry. And Mr. Racinus, I understand you would like to reserve three minutes of rebuttal. Is that right? Yes, your honor. Three minutes is great. Is it as high as it goes? That's fine. Okay, I'll be loud, your honor. We can hear you. All right. Good morning, your honors, and may it please the court. I'm Alan Racinus. I represent the appellant CUNY. Your honors, the district court in this case was, the first district court's fees order was, as you know, was remanded by this court, vacated and remanded, and this court directed it to reconsider its decision and better explain why its decision, if it reached the same one, comported with this court's precedence and the Supreme Court's precedence in this area. It said that it hadn't adequately done so the first time around. But rather than doing that, the district court basically doubled down on what it had already said. It didn't add anything more as to how its decision comported with this court's or the Supreme Court's precedence, and it basically created this justice and fairness section out of cloth. And your honors, the binding precedent in this area... You're in justice and fairness though, right? I'm sorry, your honor. We are in the business of justice and fairness though, right? Of course, your honor, of course. But I think that the important thing about this court's decision in Pino is that it properly focused on the only pertinent consideration in this area, which is as to whether a nominal damages plaintiff can receive fees, which is whether or not there was any additional relief that would entitle that litigant to fees. And at the end of Pino, on page 239, it makes very clear that unless you've gotten a novel conclusion of law in your favor, which the district court and Mr. Nights here both admit did not happen, a plaintiff has to recover something other than nominal damages in addition to the nominal damages. To quote this court, some significant measure of damages or other meaningful relief in order to get fees. And that didn't happen. That did not happen to this plaintiff. He got only nominal damages and nothing else. Well, so I'm not sure we have to decide what the panoply of cases in which fees are awardable is, because in this case on remand, and I was on the first panel, on remand, when you say the district court doubled down, what the district court did from my reading is make it very clear that the basis for the award of fees was the district court's belief that CUNY acted sort of in bad faith. And so setting aside sort of what the universe of case nominal damages cases is in which you could award fees, the district judge chose a rationale. So I guess my question is, is that rationale a basis, is bad faith a basis for the award of attorney's fees outside of the context of sanctions? The answer, Your Honor, is no. Under this court's precedence in PINO, and in the past in PINO I just read, and also in Carol v. Blinken, where it said, this court said very clearly that it held in PINO that, quote, no attorney's fees were appropriate where the plaintiff recovered only nominal damages and receipts. I understand. That's what I'm saying. I'm not sure we need to decide sort of whether there's extra relief and all this, because this is a case that's unusual. We sent it back and said, tell us exactly why you awarded fees. And the basis the district court rested its decision on was the bad faith of the defendants. It's, at least it's perception that that was, it's the conduct of the defendants, right? So whatever else happened here, you're sort of suggesting we go beyond that rationale and assess the case ourselves. I'm asking you, what if we limited ourselves to what the district court articulated as a basis? I apologize if I'm not. I think my point is PINO has an exhaustive set of categories under which a plaintiff can get, a nominal damages only plaintiff can get fees, and bad faith falls outside of that exhaustive set of categories. But let me address the bad faith point more directly also. Even if we assume for the sake of argument that bad faith is an adequate rationale under PINO, which we think is flatly incorrect under a proper reading of PINO and Carey Blinken, indeed under Farrar. But let's set that aside. There was no bad faith here, your honors. There was no bad faith. There was zero evidence of bad faith. All that happened here was CUNY said, okay, we have this arbitration. It's an arbitration about whether the employee was terminated, Mr. Knights was terminated improperly. Rather than pursue the arbitration, go forward with the arbitration, which could be time consuming. We're going to there, we recognize that there are only 13 days left on this employee's contract. So we're just going to pay him for those 13 days and move out the arbitration. And the theory, I suppose, that you're suggesting your side followed was had he won the arbitration, at most he would have gotten those 13 days. So you're giving him the full 13 days or could he have won something more? I, you know, I think that's all he could have gotten, your honor, because I'm not positive about that, that it hasn't come up, but he was saying he was improperly terminated and the contract was a temporary contract. So I think that's probably right. The arbitration could have undone the termination and you were saying if we give him all the relief he asked for, we don't have to bother with arbitration and we get back to square one and we have no need to terminate him. Can I ask you, in sort of along the lines that Judge Merriam was suggesting, we may not need to probe the outer limits of when one can or can't award attorney fees, but react to this proposition. Is it appropriate to award attorney fees based on bad faith? When the bad faith does not come in the course of the litigation, meaning when this case was first filed in court, but the purported bad faith occurs in the conduct that gave rise to the cause of action. I mean, I think, your honor, that would certainly... Is there a distinction? Is that a meaningful distinction in your mind? Yes, your honor, I think it is because I think it's by nature more speculative when the district court is going outside of its direct knowledge and experience and claiming bad faith elsewhere. And this case provides a great example of that because, again, the district court decided bad faith based on just a perfectly reasonable litigation strategy that government agencies employ all the time. Yeah, but I think I was suggesting to you the proposition that the purported bad faith that the district court was relying on here was not part of a litigation strategy. I mean, maybe it is part of a litigation strategy overall in terms of avoiding litigation, but it predated the litigation if one defines litigation as the court case. Right. No, I agree. I think that's a meaningful distinction. So if you had... I'll make this up. Let's say you had come into the district court and filed false pleadings or recklessly filed pleadings without knowing whether they were true or false and they turned out to be false or, I don't know, something that would normally be covered by Rule 11. I could see then the notion that because you engaged in bad faith conduct before the court, the court could, you know, obviously under Rule 11, sanction you perhaps under its inherent power, could sanction you, a client, but does the... how does that play into an attorney's fees analysis? I mean, I think the point, your honor, your point is well taken and as we note in our papers, the only district court case that the plaintiff is talking about in a bad faith sanctions type context or a fees context is where the litig... the plaintiff in that case misrep... made several misrepresentations or hid the ball in a certain series of discussions about a TRO, I think it was, to the district court directly and I think that's a very different situation than where the district court is attempt... is purporting to find bad faith outside. So, okay. I agree, your honor, and I know that... You've reserved three minutes for rebuttal. Yes, your honor. Thank you. Shortly, why don't we hear from counsel for the appellee. We have attorney Seymour. Yes. Yes. Good evening. My name is Roosevelt Seymour. May it please the court. First, I would like to say, your honor, that the precedents... the main precedents cited, of course, is Pinot and Farrar, but it's important to note that neither of these two cases laid down a per se rule that a plaintiff who receives only nominal damages can never receive attorney's fees. So, that's the law. They plainly stated in these cases that only in a rare circumstances may a plaintiff who receive only nominal damages receive attorney's fees. This particular district court found that this case was one of those rare circumstances. Now, the reasons cited by... Would you maybe mind reacting to the same proposition I put to your opposing counsel is, is there a difference of your mind between bad faith that occurs in the course of litigation, meaning after somebody files a complaint with the court and then, again, makes false representations to the court or engages in some sort of chicanery that the court wants to punish, and bad faith that purportedly occurs that gives rise to the cause of action itself that has been adjudicated by the jury or the or the finder of fact or whoever it might be if it were, say, a bench trial. In your mind, is there a distinction between the two? Well, of course, there is a distinction and sometimes the bad faith can occur within the pending proceeding in the purview of the district court and the bad faith could lead up to the action being filed in the first place. And, of course, we have the case of Chambers v. Nasco. In that particular case, the bad faith occurred prior to filing of the action. Yeah, remind me, what was the bad faith action in Nasco? In that particular case, there was a series of bad faith actions. There was supposed to be a contract for the sale, I believe it was a radio station, and the defendant, rather than selling the radio station, attempted to sell it to a different party. So, apparently, he never had any intent to really sell it to the plaintiff. Now, the plaintiff's counsel then told the defendant that I'm going to file an action for specific performance and I'm going to seek a temporary restraining order. The defendant's counsel then immediately arranged to have a fraudulent transfer of the radio station to a third party to avoid having the district court rule on the breach of the contract. But once the plaintiff filed the action in court and sought the restraining order, the defendant's counsel pursued other bad faith activities to defeat a judgment or to defeat a specific performance order coming into effect. So, there was bad faith before the summons from the plate was issued and there was bad faith throughout the litigation. One of them was, of course, failing to file the contract for sale with the appropriate agency in that jurisdiction. So, there was bad faith prior to the proceeding and bad faith during the proceeding. And in response to those actions in the Chambers case, the other party filed a motion for sanctions, is that right? I believe so, yes. So, we don't have that here. We have a motion under 1988 for attorney's fees, right? That's correct. But we have no motion for sanctions under the inherent powers of the court to punish bad behavior. That's correct, yes, that's correct. But if I may add this, Judge, there was another ground for the district courts in this case decision and this ground has been relied upon other district courts in attorney fees cases. If the district court finds that there is an important and significant constitutional violation has been established, in those cases, district courts will award attorney's fees and this... How important a violation was this? Again, not disparaging your client's interest in clearing his name, but how important can it be when we have a jury who's opined on that and said the damages are a dollar? I mean, the jury has made an assessment. That's correct. Of the severity of the violation and violations, as we know, can be very severe. A jury could have given a million dollars. I mean, your client was looking at millions of dollars. Or juries can look at this and say it's de minimis. And we do find that there's a legal violation, but it was effectively harmless and give a dollar. So why would we or district court be in the business of second guessing the jury's assessment of the severity of a violation? Well, in this particular case, Judge, the district court was instructed to return a verdict of a dollar based on the existing law and economic loss. So they were constrained. But that is the law. But you're not... Yeah, they were constrained. You're not suggesting that the law is wrong. Yeah. In fact, they did ask the judge, can we award beyond nominal damages based on the circumstances in this case? And the judge instructed them specifically that you cannot. Right, but... So the jury's verdict was... You're not suggesting that that's wrong. That's a wrong statement of the law. No, no. Based on the law... But you have to... And what is compensable... Yes. Against the correct metric of the law, the jury determined that this was not a severe violation. That's correct. But you have to understand particular circumstances of the nominal damages award in this case and the nominal damages award in the Pino case and in the Farrar case. It was completely different in judge. And that's the reason why Judge Block, the district court in this case, distinguished Pino and Farrar from the circumstances in this case. And he independently wrote that he believed denying someone a right to clear his name, particularly someone who works in the educational system, a right to clear his name from allegations of sexual harassment, he believed that was a significant due process violation. When you get into the finding, what about that is suggestive of bad faith? That suggests that their desire was to deprive them of constitutional rights, that they didn't do it to avoid litigation. They didn't do it because they said, look, the remedy he's asking for is 13 days, therefore we'll give him his 13 days. Just give us 13 days of contract. But the notion is that in their heart, they harbored a desire to violate his rights to a name-clearing hearing. In other words, they wanted him to be unvindicated. They wanted him. It had nothing to do with mooting the case, really. It was that they were trying to prevent him from clearing his name so he would have to live with the stigma. That's effectively, I think, what a bad faith finding would necessarily suggest here. I don't understand the basis for that when the far more logical assumption is they were litigation-averse. They thought, well, just moot it. Give him his 13 days and be done with it. Why would someone think that, no, they secretly harbored a desire in their heart to hurt your client and make him live with stigma? I don't see where that comes from. Well, because you have to remember, Judge, prior to the arbitration, we filed an Article 78 petition seeking specifically an order from the state court allowing my client to have a name-clearing hearing. That was part of the relief that we're seeking. That was the primary relief he was seeking because he knew without a name-clearing hearing, his career... If he had cleared his name, then he'd be reinstated, right? No? No, Judge. He wouldn't be reinstated. We didn't want him to live under the stigma. Let me just ask, did your relief request include reinstatement? Not entirely, no. No, no, hang on. You just said not entirely. I just want to be clear what I'm asking. Did the relief you asked include, but not be exclusively limited to a reinstatement? I don't believe so. Okay. I don't believe so, Judge. The primary relief we're seeking was a due process name-clearing hearing because as I said, he worked in student athletics and he knew with a sexual unresolved sexual harassment charge pending against him, his career would be over. That was the primary concern. That was the primary relief. And as to the arbitration, I do realize my time is running out, but as to the arbitration, we also sought the name-clearing hearing because as you stated, he only probably had another 15 days on the contract to substitute Simon. But if he's not living with the stigma, that's what he really was fighting for. And Judge Block found that CUNY knew that, that he could not maintain his career with his unresolved sexual misconduct charge. All right, counsel, let me ask you, you just, you started a minute ago or a few minutes ago saying that Judge Block made a finding that he had achieved a, there's a significant constitutional issue. So I see the word significant a couple of times in quoting other cases, but once Judge Block starts his discussion of the reasons for his imposition of fees, I don't see it. No, he specifically stated, can you tell me where? He stated two reasons, Your Honor. Okay, because I'm only seeing the one. Maybe I'm not reading it the same way you are. Yeah, he specifically gave two reasons. Okay. If you give me, give me a moment, please. Okay.  Counsel, I have a searchable document. Do you have a recollection of the language that Judge Block used? It says, I therefore consider the unique facts of this case to be tantamount to a rare example of when counsel's fees are justified for a constitutional violation, even though new rule of law resulted from the litigation. Moreover, I do not view depriving one of his constitutional entitlement to the infirmary as inconsequential. That paragraph starts with I therefore, and the prior paragraph talks about bad faith. So I read that as saying, Cooney acted in bad faith, I therefore award fees. And the inconsequential, but I thank you for pointing me to that. And he also cited another case. I believe it was McHugh versus McHugh, where another district court judge found the constitutional violation was extremely significant, even though there was only nominal damages and there was no new rule of law. So I think we have your argument, counsel. We have the ruling. So thank you very much. Why don't we turn back to Mr. Racines, who's reserved three minutes for rebuttal. Mr. Racines, if there's anything that you feel merits a response, we're all ears. Thank you, Your Honor. I mean, I think that the bad faith and the important essential constitutional issue here kind of collapse into each other because I think what Judge Block is saying is that there's an important essential constitutional issue because of the alleged bad faith. But the point here is neither of those categories is a category for relief in the form of attorney's fees under P&O. And I just want to talk more about the bad faith issue because there really is no basis, as Your Honors were saying, for the idea that we acted in bad faith in any way here. Mr. Knights could have argued, and he did argue before the arbitrator, that the arbitration was not moot because he had the right to a name clearing hearing. He lost the issue at that stage. The neutral arbitrator agreed with us. We ultimately lost that issue at the trial court level. But the district court seems to be saying that because we argued an illegal matter in good faith and lost, we somehow acted in bad faith. That makes no sense. Mr. Knights lost a big issue there, too. He lost an issue. I don't want to say big issue, too. I don't think the issue we lost was that big. But he lost an issue necessarily. Slow down a little. Sure. He lost the issue. When you look at the colloquy between the judge and the jury, the reason that jury awarded nominal damages only here was because it necessarily found that he had committed the underlying misconduct that CUNY alleged he had committed. That's why he wasn't eligible for either economic or non-economic damages. He lost that issue. He argued it before the district court. Is that bad faith? By his logic and by the district court's logic, it is. But of course, it's not. People argue things all the time. Parties argue things all the time in good faith, and they lose. The district court seems to be imputing bad faith to us simply because we lost the issue at the district court level. That makes no sense. It never has made any sense. And Pino says very clearly, Carroll says very clearly, you don't get fees if you only get nominal damages and no other relief. This case is extremely simple. He got nothing other than nominal damages, Your Honors. He relies on Justice O'Connor's concurrence. Justice O'Connor's concurrence is not binding law, but even if it were, Justice O'Connor said herself that the litigant in that case who got, who asked for $17 million and got $1 was a classic paradigmatic example of a litigant who should get nothing in fees. Mr. Knight asked for $45 million and got $1. Justice O'Connor said it's a classic example because he asked for a bundle and got a pittance. That's what happened to Mr. Knight's ear. Thank you, Your Honors. All right. Thank you very much to both counsel for coming in today. Thank you for your arguments. We will take the case of the revised method.